IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Boyd N. Boland

Civil Action No. 13-cv-02098-BNB

SEAN PROCTOR,

Plaintiff,

v.

CAROLYN W. CALVIN, Commissioner of the Social Security Administration,

Defendant.

_____

**ORDER**
_____

This action seeks review of the Commissioner's decision denying plaintiff's claim for Disability Insurance Benefits under Title II, sections 216(i) and 223(d) of the Social Security Act, 42 U.S.C. §§ 416(i) and 223(d), and Supplemental Security Income Benefits under Title XVI, section 1614(a)(3)(A), 42 U.S.C. § 1382c(a)(3)(A). The court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. § 405(g) and 42 U.S.C. 1383(c)(3). The matter has been fully briefed, obviating the need for oral argument. The decision is AFFIRMED.

**I. FACTUAL AND PROCEDURAL BACKGROUND**

The plaintiff filed for benefits on January 25, 2010, stating that he had become disabled beginning October 1, 2009. *Social Security Administrative Record* [Doc. #19] (the "Record"), pp. 259-265.[1] His applications were denied on June 1, 2010. Id. at pp. 167-168. The plaintiff

---

[1] I refer to the official page numbers of the Record which are found on the lower right-hand corner of each page, not to the page numbers that are assigned by the court's docketing system. In addition, all references to the Code of Federal Regulations are to the 2013 edition of

requested a hearing before an Administrative Law Judge ("ALJ"). Id. at p. 175. The hearing was held on August 23, 2011. Id. at pp. 114-142. On October 27, 2011, the ALJ issued a written decision finding that the plaintiff is not disabled under sections 216(i), 223(d), and 1614(a)(3)(A) of the Social Security Act. Id. at pp. 99-113. The plaintiff requested a review of the ALJ's decision by the Appeals Council. Id. at p. 97. The Appeals Council denied the plaintiff's request for review. Id. at pp. 1-6. Therefore, the ALJ's decision is the final decision of the Commissioner of Social Security. Id. at p. 1.

## II. STANDARD OF REVIEW

Review of the Commissioner's disability decision is limited to determining whether the ALJ applied the correct legal standard and whether the decision is supported by substantial evidence. Hamilton v. Secretary of Health and Human Services, 961 F.2d 1495, 1497-98 (10th Cir. 1992); Brown v. Sullivan, 912 F.2d 1194, 1196 (10th Cir. 1990). Substantial evidence is evidence a reasonable mind would accept as adequate to support a conclusion. Brown, 912 F.2d at 1196. It requires more than a scintilla but less than a preponderance of the evidence. Hedstrom v. Sullivan, 783 F. Supp. 553, 556 (D. Colo. 1992). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." Musgrave v. Sullivan, 966 F.2d 1371, 1374 (10th Cir. 1992). Further, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993). Although a reviewing court should meticulously

---

part 404, which addresses claims under Title II of the Act. All cited regulations have parallel citations in part 416, which address claims under Title XVI of the Act.

examine the record, it may not reweigh the evidence or substitute its discretion for that of the Commissioner. Id.

### III.  THE LAW

A person is disabled within the meaning of the Social Security Act only if his physical and mental impairments preclude him from performing both his previous work and any other "substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2). "When a claimant has one or more severe impairments the Social Security [Act] requires the [Commissioner] to consider the combined effects of the impairments in making a disability determination." Campbell v. Bowen, 822 F.2d 1518, 1521 (10th Cir. 1987) (citing 42 U.S.C. § 423(d)(2)(C)).  However, the mere existence of a severe impairment or combination of impairments does not require a finding that an individual is disabled within the meaning of the Social Security Act.  To be disabling, the claimant's condition must be so functionally limiting as to preclude any substantial gainful activity for at least twelve consecutive months.  See Kelley v. Chater, 62 F.3d 335, 338 (10th Cir. 1995).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled:

1.  The ALJ must first ascertain whether the claimant is engaged in substantial gainful activity.  A claimant who is working is not disabled regardless of the medical findings.

2.  The ALJ must then determine whether the claimed impairment is "severe." A "severe impairment" must significantly limit the claimant's physical or mental ability to do basic work activities.

    3. The ALJ must then determine if the impairment meets or medically equals in severity certain impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1.

    4. If the claimant's impairment does not meet or equal a listed impairment, the ALJ must determine whether the claimant has the residual functional capacity ("RFC") to perform his past work despite any limitations.

    5. If the claimant does not have the RFC to perform his past work, the ALJ must decide whether the claimant can perform any other gainful and substantial work in the economy. This determination is made on the basis of the claimant's age, education, work experience, and RFC.

20 C.F.R. §§ 404.1520(a)-(f). See also Williams v. Bowen, 844 F.2d 748, 750-52 (10th Cir. 1988).

    The claimant has the initial burden of establishing a disability in the first four steps of this analysis. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987). The burden then shifts to the Commissioner to show that the claimant is capable of performing work in the national economy. Id. A finding that the claimant is disabled or not at any point in the five-step review is conclusive and terminates the analysis. Casias v. Secretary of Health & Human Services, 933 F.2d 799, 801 (10th Cir. 1991).

## IV. ANALYSIS

    The ALJ found that (1) the plaintiff has not engaged in substantial gainful activity since October 1, 2009; (2) the plaintiff is severely impaired by asthma; (3) the plaintiff does not have an impairment or combination of impairments that meet or medically equal one of the listed

5

impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926; (4) the plaintiff has the RFC to lift and carry 20 pounds occasionally and 10 pounds frequently; sit for six hours in an eight-hour workday with normal breaks; stand and/or walk for six hours in an eight-hour workday with normal breaks; and should avoid concentrated exposure to extreme cold, wetness, and humidity, and even moderate exposure to fumes, odors, dust, gases, poor ventilation, and respiratory irritants; and (5) the plaintiff is capable of performing past relevant work as a courier. *Record*, pp. 104-109.

The plaintiff argues that the matter should be remanded because the ALJ applied the incorrect legal standard in finding that the plaintiff was noncompliant with his treatment. *Plaintiff's Opening Brief* [Doc.#23], pp. 3-8. Specifically, he argues that the ALJ failed to inquire whether there was a justifiable excuse for the plaintiff's noncompliance. Id. at p. 4.

The defendant argues that the ALJ did not deny the plaintiff benefits because he was noncompliant with his treatment regimen; he instead determined that the plaintiff was not credible due to his noncompliance with treatment. *Defendant's Response Brief*, p. 8. To the contrary, however, the record shows that although the ALJ did not expressly purport to deny benefits solely on the grounds of noncompliance, the ALJ relied primarily, if not exclusively, on evidence in the record regarding the plaintiff's noncompliance with prescribed medical treatment in making his decision. *Record*, pp. 106-108.

In order to obtain disability benefits, a claimant must follow the treatment prescribed by his physician if such treatment can restore his ability to work. 20 C.F.R. § 404.1530(a). If a claimant fails to follow prescribed treatment without a good reason, he will not be found disabled. Id. at § 404.1530(b). The Commissioner will consider a claimant's " physical, mental,

educational, and linguistic limitations (including any lack of facility with the English language) when determining if [a claimant has] an acceptable reason for failure to follow prescribed treatment." § 404.1530(c). The regulations sets forth the following as examples of good reasons for not following treatment:

> (1) The specific medical treatment is contrary to the established teaching and tenets of your religion.
>
> (2) The prescribed treatment would be cataract surgery for one eye when there is an impairment of the other eye resulting in a severe loss of vision and is not subject to improvement through treatment.
>
> (3) Surgery was previously performed with unsuccessful results and the same surgery is again being recommended for the same impairment.
>
> (4) The treatment because of its enormity (e.g. open heart surgery), unusual nature (e.g., organ transplant), or other reason is very risky for you; or
>
> (5) The treatment involves amputation of an extremity, or a major part of an extremity.

Id.

In addition, Social Security Ruling ("SSR") 82–59 provides:

> SSA may make a determination that an individual has failed to follow prescribed treatment only where all of the following conditions exist:
>
> 1. The evidence establishes that the individual's impairment precludes engaging in any substantial gainful activity (SGA) ...
>
> 2. The impairment has lasted or is expected to last for 12 continuous months from onset of disability or is expected to result in death; and
>
> 3. Treatment which is clearly expected to restore capacity to engage in any SGA (or gainful activity, as appropriate) has been prescribed by a treating source; and

> 4. The evidence of record discloses that there has been refusal to follow prescribed treatment.
>
> Where SSA makes a determination of "failure," a determination must also be made as to whether or not failure to follow prescribed treatment is justifiable.
>
> \* \* \*
>
> Based on the evidence in file, SSA may decide that it appears that the claimant . . . does not have a good reason for failing to follow treatment as prescribed by a treating source and that the treatment is expected to restore ability to engage in any SGA. . . . However, before a determination is made, the individual . . . will be informed of this fact and of its effect on eligibility for benefits. The individual will be afforded an opportunity to undergo the prescribed treatment or to show justifiable cause for failing to do so.

1982 WL 31384 at *1, 5.

In addition, the Tenth Circuit has stated:

> Courts reviewing whether a claimant's failure to undertake treatment will preclude the recovery of disability benefits have considered four elements, each of which must be supported by substantial evidence: (1) the treatment at issue should be expected to restore the claimant's ability to work; (2) the treatment must have been prescribed; (3) the treatment must have been refused; (4) the refusal must have been without justifiable excuse.

Teter v. Heckler, 775 F.2d 1104, 1107 (10th Cir.1985).

In determining the plaintiff's RFC, the ALJ stated:

> While the undersigned does not dispute that the claimant has asthma, and that this condition is a severe impairment, the record does not support a finding of disability. The record indisputably shows that the claimant's asthma is a condition, which is reasonably controlled with prescribed treatment (See Exhibit 1F). In June 2009, the claimant reported that his asthma had been controlled for the past five years, but that he had been having more flare-ups, due to "not picking up [his] medication" (Exhibit 1F). Indeed, the record documented such asthmatic flare-ups, as stated by the claimant, and that these occurred because the claimant's own volition. For instance, in January 2010, the claimant was

described as having a history of "mild persistent asthma" with an acute exacerbation (Exhibit 3F). It was noted that the claimant had been out of his Albuterol and Advair for approximately one week. However, during the course of his hospitalization, the claimant's condition improved with just occasional expiratory wheezes and good air movement throughout. The claimant was discharged home a couple of days later in good condition (Exhibit 3F).

In June 2008, prior to the alleged onset of disability date, the undersigned notes that the claimant complained of an asthma exacerbation, while at the Blackhawk Casinos. However, the record showed that the claimant had been out of his Symbicort for weeks and was using only Proventil. At this time, the claimant also reported never having an asthmatic attack requiring hospitalization, and that his symptoms were usually managed with Proventil, as needed, and Symbicort daily (Exhibit 6F). Jennifer Gaudiant, M.D., diagnosed the claimant with a likely asthmatic exacerbation secondary to medication non-adherence (Symbicort).

Other evidence prior to the alleged onset date continued to document the claimant's non-adherence to his treatment regimen with resulting exacerbation in symptoms. In October 2007, the record showed that the claimant complained of shortness of breath and chest tightness, but reported that he had run out of his Albuterol a week prior (Exhibit 6F). On examination, the claimant was described as having no wheezing with good air movement. The claimant was diagnosed as having a "mild" asthma exacerbation. In February 2005, the claimant presented to the emergency room with shortness of breath; however, it was noted that the claimant's symptoms were "mild," and that he had run out of his Albuterol and Advair (Exhibit 8F). A few months later, on June 26, 2005, the claimant, again, ran out of his medication the week prior and began to have chest tightness (Exhibit 8F). Similarly, in December 2004, the claimant also complained of shortness of breath, but, again, reported running out of his medication (Exhibit 8F).

While the record clearly documents asthmatic flare-ups, the undersigned cannot overlook the correlation between the claimant's non-adherence to medical regimen and his increased symptoms. In addition, the claimant has not offered a good reason for his failure to adherence to his medical regimen. This evidence undermines the claimant's credibility.

Other evidence also undermines the claimant's credibility. For instance, although the claimant alleged serious asthmatic flare-ups at least twice a week for four months, while working for Famous Dave, and that this job ended in April 2011, because of these flare-ups, an examination of the record from January to April 2011, does not show the frequency or severity of asthmatic attacks the claimant has alleged. Furthermore, the undersigned would expect that, if a person had serious asthmatic attacks at least twice a week for four months, the record would reflect such occurrences and treatment. The absence of such evidence seriously undermines the claimant's credibility.

When considering the record, as a whole, the undersigned finds that the claimant's allegations of disability are less than fully credible. Noticeably, however, at the consultative examination, the claimant reported that, when he was not having an asthmatic attack, he could sit for hours, stand for hours, and walk for hours (Exhibit 4F). He also stated that he could lift and carry at least 20 pounds and much heavier, when he was not having an asthmatic attack (Exhibit 4F). Based on the record and the claimant's stated capabilities, the undersigned finds the claimant's asthma is reasonably controlled with medication, and that he has the capacity for work at the light level of exertion, as described above.

As for the opinion evidence, the undersigned notes that the record contains several Med 9 Forms dated prior to and after the alleged onset date of disability (See Exhibits 6F and 8F). However, the undersigned notes that, because these forms do not provide for functional limitations and only state an opinion of disability, they are not persuasive and are afforded little weight. In regards to Dr. Carson's opinions that the claimant **currently** could not sit or be up and about for more than one or two hours, or walk or climb, or lift more than 10 pounds for very short distances, the undersigned affords these opinions little weight. As discussed above, the undersigned notes that the claimant's exacerbations of symptoms are related to his medication noncompliance or non-adherence, and that the claimant has not provided a good cause for his failure to follow his prescribed medical regimen. In addition, both the claimant and Dr. Carson conceded that, if the claimant's asthma were controlled, he could perform the demands of light work, as described above. Because the undersigned finds that the claimant's asthma is reasonably controlled with medication, but for the claimant's noncompliance, the claimant retains the capacity for work at the light level of exertion.

*Record*, pp. 106-108 (emphasis in original).

At the hearing, the ALJ attempted to understand why the plaintiff did not comply with his prescribed medical regimen:

> Q: What's your condition?
>
> A: Well, I have very serious asthma attacks.
>
> Q: Well, I heard the National Jewish, according to your record, it says as long as you take your medication, you control that?
>
> A: That's not true. There's been cases where I've taken my medication, like recently, and none of those meds worked for me at that point. So, I had to go into the hospital at one point this year, sometime in January. Actually at the University.
>
> Q: I'd have sworn that I read a section in one of these that said you went five years without any asthma problems, but as soon as you started skipping your meds, you got attacks.
>
> A: No, that's not true.
>
> Q: That's not true?
>
> A: No, I'll always have attacks, especially in cold weather and if I've doing too much, heaving lifting and stuff like that. That's why I don't do any running or any of those things.
>
> \* \* \*
>
> Q: Let me ask you, in Jewish, Mr. Proctor was referred for a health and behavioral evaluation in order to determine the psychological factors that may be influencing his asthma. Mr. Proctor is a 38 year-old man with asthma for the past five years. He stated that his asthma had been under control over the last five years, but that he went off his medication due to not picking up medication and been having more flare-ups. That's a lie?

>       A:      That's a misunderstanding where he got that from because I
>               always had medication, but sometimes he put me on
>               predinisone.

*Record*, pp. 119, 121, 124.

In addition, the plaintiff testified that he had a Med-9 form filled out every year since approximately 2005. A Med-9 form is a "form used by the State and County Departments of Human Services in determining medical eligibility for State Aid to the Needy Disabled (AND) program." Id. at p. 463. The ALJ asked the plaintiff's counsel if he was able to obtain a current Med-9 form or a medical source statement from the plaintiff's primary care physician. He stated that the form would be helpful "because Dr. Carson, who I sent [the plaintiff] to who I asked for a CE, says that, he must have read the same records I did from National Jewish and University that said everything was okay until he got off his meds." *Record*, p. 124. The plaintiff's counsel replied:

>       Yes, and there's a direct contradiction. I spent a fair amount of
>       Mr. [sic] Proctor in the last couple of weeks and literally, what
>       he's saying is in contradiction to what the medical records say.

Id.

The plaintiff did not present any evidence to show that his failure to take his prescribed medications was justified. He was given an opportunity to fully express his specific reasons for not complying with the prescribed treatment, but he adamantly denied noncompliance.[2] Under these circumstances, I find that the ALJ complied with the case law, 20 C.F.R. § 404.1530, and

---

[2]Moreover, although the plaintiff contends that the ALJ should have inquired into his ability to afford his medication, *Plaintiff's Opening Brief*, p. 5, the record does not contain any evidence to show that he did not take his medications because he could not afford to buy them. To the contrary, he testified that he ran out of medications because he was using "way too much" of them. *Record*, p. 132.

SSR 82–59. In addition, I find that the ALJ's decision is supported by substantial evidence.

Accordingly,

IT IS ORDERED that the decision of the Commissioner is AFFIRMED.

Dated July 18, 2014.

BY THE COURT:

s/ Boyd N. Boland
United States Magistrate Judge